**CARLSON LYNCH LLP**
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (CA 305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Ste. 603
San Diego, California 92101
Telephone: 619.762.1910
Facsimile: 619.756.6991

*Attorneys for Plaintiff and*
*Proposed Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLIE HARRIS, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>PFI WESTERN STORES, INC., a Missouri corporation, and DOES 1- 50, inclusive,<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Violation of California's Unfair Competition Laws ("UCL"); California Business & Professions Code Sections 17200, *et seq.***<br><br>2. **Violation of California's False Advertising Laws ("FAL"); California Business & Professions Code Sections 17500, *et seq.***<br><br>3. **Violations of California Consumer Legal Remedies Act ("CLRA"); Civ. Code § 1750, *et seq.***<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff HOLLIE HARRIS brings this action on behalf of herself and all others similarly situated against Defendant PFI WESTERN STORES, INC. ("Defendant" or "PFI Western"), and states:

## I. NATURE OF ACTION

1. "If everyone is getting a deal, is anyone really getting a deal?"[1] This class action seeks monetary damages, restitution, declaratory and injunctive relief from Defendant PFI Western arising from its deceptive business practice of advertising fictitious prices and corresponding phantom discounts on merchandise sold in its e-commerce retail store, PFIWestern.com.  Defendant sells a variety of name brand and exclusively branded western wear, including boots, shoes, western-style clothing, hats, saddles, and other horse riding equipment in its e-commerce store to consumers throughout California and the United States.

2. The practice of false reference pricing occurs when a retailer fabricates a fake regular, original, and/or former reference price, and then offers an item for sale at a deeply "discounted" price.  The result is a sham price disparity that misleads consumers into believing they are receiving a good deal and induces them into making a purchase.  In reality, the practice artificially inflates the true market price for these items by raising consumers' internal reference price, and therefore the value, ascribed to these products by consumers.  Retailers drastically benefit from employing false reference pricing schemes and experience increased sales because consumers use advertised reference prices to make purchase decisions.  The information available to consumers varies for different types of

---

[1] David Streitfeld, *It's Discounted, but is it a Deal? How List Prices Lost Their Meaning*, New York Times, https://www.nytimes.com/2016/03/06/technology/its-discounted-but-is-it-a-deal-how-list-prices-lost-their-meaning.html, (March 6, 2016), last accessed April 28, 2017.

products,[2] but consumers frequently lack full information about a product and, as a result, can incorporate information from sellers to make purchase decisions.[3]

3.      PFI Western's deceptive advertised reference prices are thus incorporated into the consumer's decision process. First, a product's "price is also used as an indicator of product quality."[4]  In other words, consumers view PFI Western's deceptive advertised reference prices as a proxy for product quality. Second, reference prices "appeal[] to consumers' desire for bargains or deals."[5] Academic researchers note how consumers "sometimes expend more time and energy to get a discount than seems reasonable given the financial gain involved" and "often derive more satisfaction from finding a sale price than might be expected on the basis of the amount of money they actually save."[6]  Under this concept, coined as "transaction utility" by Noble Prize-winning economist Richard

---

[2] Even within a product, consumers may have imperfect information on the individual attributes. Economists describe "search goods" as those whose attributes "can be ascertained in the search process prior to purchase" (*e.g.*, style of a shirt), "experience goods" as those whose attributes "can be discovered only after purchase as the product is used" (*e.g.*, longevity of a shirt), and "credence goods" as those whose attributes "cannot be evaluated in normal use" (*e.g.*, whether the shirt's cotton was produced using organic farming methods). Darby, Michael R., and Edi Karni. "Free Competition and the Optimal Amount of Fraud." *The Journal of Law and Economics* 16 no. 1 (1973): 67-88, pp. 68-69.

[3] "Not only do consumers lack full information about the prices of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain … a consumer can obtain information from relatives and friends, consumer magazines, or even from advertising". Nelson, Phillip. "Information and Consumer Behavior." *Journal of Political Economy* 78, no. 2 (1970): 311-329, pp. 311-312.

[4] Grewal, Dhruv, and Larry D. Compeau. "Comparative price advertising: Informative or deceptive?" *Journal of Public Policy & Marketing* (1992): 52-62, p. 54. Also see Thaler, Richard. "Mental Accounting and Consumer Choice." *Marketing Science* 4, no. 3 (1985): 199-214, p. 212 ("The [reference price] will be more successful as a reference price the less often the good is purchased. The [reference price] is most likely to serve as a proxy for quality when the consumer has trouble determining quality in other ways (such as by inspection)").

[5] Grewal, Dhruv, and Larry D. Compeau. "Comparative price advertising: Informative or deceptive?" *Journal of Public Policy & Marketing* (1992): 52-62, p. 52.

[6] Darke, Peter and Darren Dahl. "Fairness and Discounts: The Subjective Value of a Bargain." *Journal of Consumer Psychology* 13, no 3 (2003): 328-338, p. 328.

Thaler, consumers place some value on the psychological experience of obtaining a product at a perceived bargain.[7]

4.     Research in marketing and economics has long recognized that consumer demand can be influenced by "internal" and "external" reference prices.[8]  Internal reference prices are "prices stored in memory" (*e.g.*, a consumer's price expectations adapted from past experience) while external reference prices are "provided by observed stimuli in the purchase environment" (*e.g.*, a "suggested retail price," or other comparative sale price).[9] Researchers report that consumer's internal reference prices adjust toward external reference prices when valuing a product.[10] For infrequently purchased products, external reference prices can be particularly influential because these consumers have little or no prior internal reference.[11] In other words, "[t]he deceptive potential of such advertised reference prices are likely to be considerably higher for buyers with less experience or

[7] "To incorporate … the psychology of buying into the model, two kinds of utility are postulated: *acquisition utility* and *transaction utility*. The former depends on the value of the good received compared to the outlay, the latter depends solely on the perceived merits of the 'deal'". Thaler, Richard. "Mental Accounting and Consumer Choice." *Marketing Science* 4, no. 3 (1985): 199-214, p. 205. Other researchers describe this concept as "transaction value" instead of "transaction utility", noting that "[r]etailers and manufacturers are appealing to buyers' desires to 'get a deal' (or transaction value[]) by comparing their sale price with a higher advertised reference price. Such a comparison makes the sale price more attractive in the buyers' mind". Grewal, Dhruv, and Larry D. Compeau. "Pricing and public policy: A research agenda and an overview of the special issue." *Journal of Public Policy & Marketing* 18, no. 1 (1999): 3-10, p. 7.

[8] Empirical results "suggest that internal reference prices are a significant factor in purchase decisions. The results also add empirical evidence that external reference prices significantly enter the brand-choice decision." Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal and External Reference Prices using Scanner Data." *Journal of Consumer Research* 19, no. 1 (1992): 62-70, p. 68.

[9] Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal and External Reference Prices using Scanner Data." *Journal of Consumer Research* 19, no. 1 (1992): 62-70, p. 62.

[10] "Buyers' internal reference prices adapt to the stimuli prices presented in the advertisement. That is, buyers either adjust their internal reference price or accept the advertised reference price to make judgments about the product's value and the value of the deal." Grewal, Dhruv, Kent B. Monroe, and Ramayya Krishnan. "The Effects of Price-Comparison Advertising on Buyers' Perceptions of Acquisition Value, Transaction Value, and Behavioral Intentions." *The Journal of Marketing* 62 (1998): 46-59, p. 48.

[11] As Thalen notes, "the [suggested retail price] will be more successful as a reference price the less often the good is purchased." Thaler, Richard. "Mental Accounting and Consumer Choice." Marketing Science 4, no. 3 (1985): 199-214, p. 212.

knowledge of the product and product category."[12]  Academic literature further reports that "there is ample evidence that consumers use reference prices in making brand choices"[13] and publications have summarized the empirical data as follows:

> "Inflated reference prices can have multiple effects on consumers. They can increase consumers' value perceptions (transaction value and acquisition value), reduce their search intentions for lower prices, increase their purchase intentions, and reduce their purchase intentions for competing products … Inflated and/or false advertised reference prices enhance consumers' internal reference price estimates and, ultimately, increase their perceptions of value and likelihood to purchase[.]"[14]

5.      The California legislature and federal regulators recognize the harm attendant to false reference pricing schemes and prohibit the practice.  The law recognizes the reality that consumers often purchase merchandise marketed as being "on sale" purely because the proffered discount seemed too good to pass up. Accordingly, retailers have an incentive to lie to customers and advertise false sales. The resulting harm is tangible – the bargain hunter's expectations about the product he purchased is that it has a higher perceived value and he may not have purchased the product but for the false savings.  As the Ninth Circuit recognized in *Hinojos,* misleading reference prices effect an economic injury "because the bargain hunter's expectations about the product he just purchased is precisely that it has a higher perceived value and therefore has a higher resale value." *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1106 (9th Cir. 2013).

6.      PFI Western engages in a false and misleading reference price scheme in the

---

[12] Grewal, Dhruv, and Larry D. Compeau. "Pricing and public policy: A research agenda and an overview of the special issue." *Journal of Public Policy & Marketing* 18, no. 1 (1999): 3-10, p. 7.

[13] Kalyanaram, Gurumurthy, and Russell S. Winer. "Empirical Generalizations from Reference Price Research." *Marketing Science* 14, no. 3 (1995): G161-G169, p. G161.

[14] Grewal, Dhruv, and Larry D. Compeau. "Pricing and public policy: A research agenda and an overview of the special issue." *Journal of Public Policy & Marketing* 18, no. 1 (1999): 3-10, p. 7.

CLASS ACTION COMPLAINT

marketing and selling of the products offered on its website.  PFI Western advertises merchandise for sale by listing the merchandise with a fictitious "Regular Price" and a corresponding "Your Price." The "Regular Price" price represents to consumers the merchandise's former, or original, price and the "Your Price" represents to consumers a significant discount or savings from the "Regular Price." The "Regular Price" appears as a strikethrough, for example, "$~~299.99~~," followed by the "Your Price," i.e. "$139.99." Attached hereto as *Exhibit A* are numerous snapshots from PFIWestern.com depicting the false reference pricing scheme.  Attached hereto as *Exhibit B* are numerous snapshots from PFIWestern.com taken through the Wayback Machine – a well-regarded archive of internet webpages as they existed at a singular point in time.  The "Your Price" "discounts" from the advertised "Regular Price" on PFIWestern.com typically range from around 30% up to and, in many cases, over 60%. *See Exhibits A and B.*

7.     PFI Western thus increases sales of its merchandise by creating the illusion of bargains in offering its products at prices reduced from fabricated, arbitrary, and false former prices.  The only plausible explanation for this practice is to drive sales[15] and artificially inflate the price at which consumers are willing to buy Defendant's products.[16]

8.     PFI Western's perpetual discounting of its merchandise constituted false, fraudulent, and deceptive advertising because the advertised reference listed substantially higher prices than those actually offered by PFI Western  The reference prices are a total fiction used exclusively as a benchmark from which the false discount and corresponding "sale" price was derived. PFI Western's scheme has the effect of tricking consumers into believing they are getting a significant deal by purchasing merchandise at a steep discount,

---

[15] "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Grewal, Dhruv, and Larry D. Compeau, "Comparative Price Advertising: Informative or Deceptive?" *Journal of Public Policy & Marketing* 11, no. 1 (1992): 52-62, at p. 55.

[16] "[C]onsumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price." Gotlieb, Jerry B. and Cyndy Thomas Fitzgerald, "An Investigation into the Effects of Advertised Reference Prices on the Price Consumers are Willing to Pay for the Product," *Journal of Applied Business Research* 6, no. 1 (1990): 59-69, at p. 66.

when in reality, consumers are paying for merchandise at its usual retail price. PFI Western's deceptive pricing scheme further artificially raises the prices actually paid by consumers by creating the false impression of a bargain.

9.     PFI Western's merchandise sold through its e-commerce channel is *never* offered for sale, nor actually sold, at the advertised reference ("Regular") price. Thus, the advertised reference prices are false and used solely to induce consumers into believing that the merchandise was once sold at the reference price and will be again if the consumer does not make a purchase at the "bargain" price.  PFI Western engages in this practice knowing full well that the advertised products are never actually offered or sold at the advertised reference prices in order to facilitate sham markdowns and drive sales, thereby deceiving its customers into believing they are getting a substantial bargain.

10.     Moreover, the advertised discounts were fictitious because the reference prices did not represent a *bona fide* price at which PFI Western previously sold a substantial quantity of its products for a reasonable period of time as required by the Federal Trade Commission ("FTC").  In addition, the represented advertised reference prices were not the prevailing market retail price within the three months immediately preceding the publication of the advertised former reference price, as required by California law.

11.     Through its false and misleading marketing, advertising, and pricing scheme, PFI Western violated and continues to violate California and federal law which prohibits the advertisement of goods for sale as discounted from former prices that are false and which prohibits the dissemination of misleading statements about the existence and amount of price reductions. Specifically, PFI Western violated and continues to violate: California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.* (the "UCL"); California's False Advertising Law, Business & Professions Code §§ 17500, *et seq.* (the "FAL"); the California Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA"); and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements (15 U.S.C. § 52(a)).

12.    Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased one or more PFI Western products from PFIWestern.com that was deceptively represented as discounted from a false former reference price. Plaintiff seeks to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased merchandise tainted by this deceptive pricing scheme.   Plaintiff also seeks to enjoin PFI Western from using false and misleading misrepresentations regarding former price comparisons in its labeling and advertising permanently. Further, Plaintiff seeks to obtain damages, restitution, and other appropriate relief in the amount by which PFI Western was unjustly enriched as a result of its sales of merchandise offered a false discount.

13.    Finally, Plaintiff seeks reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## II.    JURISDICTION AND VENUE

14.    This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Class have a different citizenship from PFI Western.

15.    The Central District of California has personal jurisdiction over PFI Western because PFI Western is a corporation or other business entity authorized to conduct and does conduct business in the State of California. PFI Western conducts sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through the operation of its online retail store within the State of California.

16.    Venue is proper under 28 U.S.C. § 1391(b)(2) because PFI Western transacts substantial business in this District. A substantial part of the events giving rise to Plaintiff's

claims arose here.

## III. PARTIES

**Plaintiff**

17.     Hollie Harris resides in Brea, California.  Plaintiff, in reliance on Defendant's false and deceptive advertising, marketing and discounting pricing schemes, purchased PFI Western Womens Plaid Flannel Button Down Shirt in black from PFI Western's e-commerce retail store on her computer while at her home residence in Brea, California on February 15, 2019. Ms. Harris examined several women's plaid flannel button down shirts on PFI Western's website before deciding on a final shirt after reviewing the item's advertised sale price. The flannel button down shirt Ms. Harris purchased, the PFI Western Womens Plaid Flannel Button Down Shirt, was advertised as having a "Regular Price" price of $29.99. PFI Western advertised the item as having a "Your Price," or sale price, of $24.99.

18.     After observing the "Regular Price" of the item and the accompanying "Your Price," Ms. Harris believed she was receiving a significant discount on the item she had chosen. Because she liked the item and felt that the discounted price would likely not last, and that she was getting a significant bargain on the merchandise, she proceeded to finish checking out and purchased the flannel button down shirt. Ms. Harris paid $24.99, plus tax and shipping and handling, for the plaid flannel button down shirt.

19.     However, this product was never offered for sale at the "Regular Price" listed on PFI Western's e-commerce retail store and certainly not within the 90 days preceding Ms. Harris' purchase.  Neither Plaintiff's receipt nor any other language on the website observed or relied upon by Plaintiff indicated that the product was not offered previously at the advertised reference price.

20.     Plaintiff was damaged in her purchase because Defendant's false reference price discounting scheme inflated the true market value of the item she purchased. Plaintiff is susceptible to this reoccurring harm because she cannot be certain that PFI Western has corrected this deceptive pricing scheme and she desires to shop at PFI Western's e-

CLASS ACTION COMPLAINT

commerce retail store in the future. Plaintiff does not have the resources on her own to determine whether Defendant is complying with California and Federal law with respect to its retail pricing practices.

**Defendant**

21.     PFI Western is an online retail store and is self-admittedly "America's Western Store." PFI Western sells a variety of name brand western wear such as Corral, Ariat, Justin, Tony Lama, Anderson Bean, Old Gringo, Durango, Wrangler, Cinch, Miss Me, Roar, Stetson, as well as a variety brands exclusive to PFI Western, including Big Spur Hat Co., Saddle City, its flagship "biggest brand to date" BootDaddy, and its eponymous PFI Western.  The company directly markets its merchandise to consumers in the State of California via its online advertisements including its price tags and e-commerce website.

22.     Plaintiff is informed and believes, and upon such information and belief alleges, Defendant PFI Western is a Missouri corporation with its principal executive offices in Springfield, Missouri. PFI Western operates its e-commerce retail store(s), PFIWestern.com and PFIWestern.com/BootDaddy, and advertises, markets, distributes, and/or sells products in California and throughout the United States.

23.     Plaintiff does not know the true names or capacities of the persons or entities sued herein as DOES 1-50, inclusive, and therefore sues such Defendants by such fictitious names.  Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of these Defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## IV.    FACTUAL BACKGROUND

**The Fraudulent Sale Discounting Scheme**

24.     PFI Western engages in a scheme to defraud its customers by perpetually discounting merchandise sold in its e-commerce retail store. PFI Western consistently advertises merchandise with a false "Regular Price" and a corresponding "Your Price," or

sale price, immediately next to or below the item. The "Regular Price" is printed with a "strikethrough," communicating to the consumer that the "Regular Price" is a former price of the item that is now being offered at a substantial discount. The "Your Price" conveys to the customer a deeply discounted price at which the item is presently being offered for sale. *See, e.g., Exhibit A*.

25.     However, at no time are the products ever offered for sale anywhere at the "Regular Price." The "Regular Price" is merely a false reference price, which PFI Western utilizes to deceptively manufacture a deeply discounted sale price referred to as the "Your Price" on the merchandise sold in PFI Western's e-commerce retail store during the Class period.

26.     This practice is not accidental. Rather, this practice is a fraudulent scheme intended to deceive consumers into: (1) making purchases they otherwise would not have made; and/or (2) paying substantially more for merchandise consumers believed was heavily discounted and thus, worth more than its actual value.

27.     Retailers, including PFI Western, understand that consumers are susceptible to a good bargain, and therefore, PFI Western has a substantial interest in lying in order to generate sales. A product's "Regular Price" matters to consumers because it serves as a baseline upon which consumers perceive a product's value. In this case, PFI Western has marked the merchandise with a "Regular Price" or false reference price which conveys to consumers, including to Plaintiff, "the product's worth and the prestige that ownership of the product conveys." *See Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1106 (9th Cir. 2013) (citing Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992) ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."); *id*. at 56 ("[E]mpirical studies indicate that as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases.").   As the Ninth Circuit recognizes, "[m]isinformation about a product's 'normal' price is…significant to many

consumers in the same way as a false product label would be." *See Hinojos*, 718 F.3d at 1106.

28.    PFI Western's pricing advertising uniformly include both the false "Regular Price," which is crossed out, and the actual "Your Price," or sale price, immediately next to or beneath nearly all items sold at PFI Western's e-commerce retail store.  This uniform scheme intends to and does provide misinformation to the customer. This misinformation communicates to consumers, including Plaintiff, that the products sold at PFI Western's e-commerce retail store have a greater value than the advertised discounted price.

29.    Plaintiff is informed and believes and thereon alleges that Defendant has not and does not track the relevant market prices, if any, of its products to the extent those products have a relevant market outside of Defendant.

**Investigation**

30.    Merchandise sold at PFI Western's e-commerce retail store is priced uniformly. That is, the merchandise sold at PFI Western bears a substantially discounted sale price printed directly next to the "crossed out" or "strikethrough" "Regular Price."  The merchandise purchased by Ms. Harris was priced with a false "Regular Price" and a corresponding discounted price for at least the 90-day period immediately preceding Plaintiff's purchase.  The merchandise purchased by Ms. Harris was not and is not offered for sale in any other market.

31.    Plaintiff's counsel's investigation cataloged the pricing practices of PFI Western's e-commerce retail store, PFIWestern.com, for several months before and after Ms. Harris' purchase. A sample of the items tracked include: Ariat Mens Heritage Western Round Toe Cowboy Boots Brown, Ariat Mens WorkHog XT Work Boots 10024958, Ariat Mens Heritage Western Deertan Cowboy Boots Black, BootDaddy with Anderson Bean Womens Big Bass Boots 3336M, Laredo Womens Spellbound Square Toe Cowboy Boots 5661, BootDaddy with Anderson Bean Womens FQ Ostrich Boots 4376M, BootDaddy with Ariat Womens Shiloh Cowboy Boots 10025979, BootDaddy Womens Aztec Sequin Boot Cut Jeans and Ariat Womens Ella Trouser Bluebell Wide Leg Jeans. For the several

months tracked each product remained significantly discounted from its fixed reference price.   None of the products were ever offered for sale at their respective advertised reference price.   The investigation indicated that the false reference pricing scheme was uniform across PFI Western's e-commerce retail store.

32.   Additionally, Plaintiff's counsel researched PFI Western's e-commerce retail store through the Wayback Machine.   The website snapshots recorded by the Wayback Machine observed across the several months before and after Plaintiff's purchase indicated perpetual discounting uniformly across Defendant's products. *See Exhibit B*.

33.   Thus, the fraudulent price scheme applies to all merchandise offered for sale on PFI Western's e-commerce retail store, including the plaid flannel button down shirt purchased by Plaintiff.

### Plaintiff and the Class are Injured by PFI Western's Deceptive Pricing Scheme

34.   The "Regular Price" listed and advertised on products sold at PFI Western's e-commerce retail store are fake reference prices, utilized only to perpetuate PFI Western's fake discount scheme.

35.   PFI Western knows that its comparative price advertising is false, deceptive, misleading, and unlawful under California and federal law.

36.   PFI Western fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the Class the truth about its advertised discount prices and former reference prices.

37.   At all relevant times, PFI Western has been under a duty to Plaintiff and the Class to disclose the truth about its false discounts.

38.   Plaintiff relied upon PFI Western's artificially inflated "Regular Price" and false discounts when purchasing the plaid flannel button down shirt from PFI Western. Plaintiff would not have made such purchase but for PFI Western's representations regarding the false "Regular Price" and the fictitious sales price of the merchandise. Plaintiff may in the future shop at PFI Western's e-commerce retail store.

39.     Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that PFI Western advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually was. Plaintiff, like other Class members, was lured in, relied on, and was damaged by the deceptive pricing scheme that PFI Western carried out.

40.     PFI Western intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiff and the Class to purchase merchandise sold in its e-commerce retail store.

41.     Plaintiff was damaged in her purchase because Defendant's false reference price discounting scheme inflated the true market value of the items she purchased.  Plaintiff was misled into believing that she was receiving substantial savings on her purchase compared to the price at which she believed Defendant formerly sold the plaid flannel shirt. Plaintiff reasonably believed that thought she was purchasing a product with a significantly higher value based on the false advertised reference price and the bargain implied by the purported "discount."

## V.     CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendant for violations of California state laws:

> All persons, within the State of California, who, within the preceding four years (the "Class Period"), purchased from PFI Western's e-commerce retail store, PFIWestern.com, one or more products at discounts from the advertised "Regular Price" and who have not received a refund or credit for their purchase(s).

Excluded from the Class are PFI Western, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of PFI Western.  Plaintiff reserves the right to expand,

limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

43.   ***Numerosity***: The class members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Class contains hundreds of thousands of individuals who have been damaged by PFI Western's conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff.

44.   ***Existence and Predominance of Common Questions of Law and Fact***:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

      **a.**    Whether, during the Class Period, PFI Western used false "Regular Price" labels and falsely advertised price discounts on merchandise sold in its e-commerce retail store;

      **b.**    Whether, during the Class Period, the "Regular Price" advertised by PFI Western were the prevailing market prices for the products in question during the three months period preceding the dissemination and/or publication of the advertised former prices;

      **c.**    Whether PFI Western's alleged conduct constitutes violations of the laws asserted;

      **d.**    Whether PFI Western engaged in unfair, unlawful and/or fraudulent business practices under the laws asserted;

      **e.**    Whether PFI Western engaged in false or misleading advertising;

      **f.**    Whether Plaintiff and Class members are entitled to damages and/or restitution and the proper measure of that loss; and

      **g.**    Whether an injunction is necessary to prevent PFI Western from continuing to use false, misleading or illegal price comparison.

45.   ***Typicality***:  Plaintiff's claims are typical of the claims of the Class members

because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by PFI Western's false and deceptive price advertising scheme, as alleged herein.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class members.

46.    *Adequacy*:  Plaintiff will fairly and adequately protect the interests of the Class members.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.   Plaintiff has no antagonistic or adverse interest to those of the Class.

47.    *Superiority*: The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to her and the Class for the wrongs alleged.  The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against PFI Western.  It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and PFI Western will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

48.    All Class members, including Plaintiff, were exposed to one or more of PFI Western's misrepresentations or omissions of material fact claiming that former "Regular Price" advertised prices were in existence.  Due to the scope and extent of PFI Western's consistent false "Your Price," or sale price, advertising scheme, disseminated in a years-long campaign to California consumers, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class.  In addition, it can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the representations contained in PFI Western's false advertising scheme when purchasing merchandise sold at PFI Western's e-commerce retail store.

49.    PFI Western keeps extensive computerized records of its customers through

its online sales data as well as through, *inter alia*, customer loyalty programs and general marketing programs.  PFI Western has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of California's Unfair Competition Law ("UCL")**
**California Business and Professions Code § 17200, *et seq.***

50.   Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

51.   The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

52.   The UCL imposes strict liability.  Plaintiff need not prove that PFI Western intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – but only that such practices occurred.

### *"Unfair" Prong*

53.   A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

54.   PFI Western's actions constitute "unfair" business practices because, as alleged above, PFI Western engaged in misleading and deceptive price comparison advertising that represented false "Regular Price[s]" and corresponding deeply discounted prices. The discounted prices were nothing more than fabricated "Regular Price[s]" leading to phantom markdowns.  PFI Western's acts and practices offended an established public policy of transparency in pricing, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

55.     The harm to Plaintiff and Class members outweighs the utility of PFI Western's practices. There were reasonably available alternatives to further PFI Western's legitimate business interests other than the misleading and deceptive conduct described herein.

**"Fraudulent" Prong**

56.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

57.     PFI Western's acts and practices alleged above constitute fraudulent business acts or practices as it has deceived Plaintiff and is highly likely to deceive members of the consuming public. Plaintiff relied on PFI Western's fraudulent and deceptive representations regarding its "Regular Price[s]" for products which PFI Western sells at its e-commerce retail store. These misrepresentations played a substantial role in Plaintiff's decision to purchase those products at steep discounts, and Plaintiff would not have purchased those products without PFI Western's misrepresentations.

58.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

**"Unlawful" Prong**

59.     PFI Western's act and practices alleged above constitute unlawful business acts or practices as it has violated state and federal law in connection with its deceptive pricing scheme. The Federal Trade Commission's Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the Federal Trade Commission, false former pricing schemes, similar to the ones implemented by PFI Western, are described as deceptive practices that would violate the FTCA:

 (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former priced is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain

---

17

being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – ***for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one***; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

60.     In addition to federal law, California law also expressly prohibits false former pricing schemes.  California's False Advertising Law, Bus. & Prof. Code §17501, ("FAL"), entitled "*Worth or value; statements as to former price*," states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

***No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement*** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501 (emphasis added).

61.     As detailed in Plaintiff's Third Cause of Action below, the Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), ("CLRA"), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact

concerning reasons for, existence of, or amounts of price reductions."

62.     The violation of any law constitutes an "unlawful" business practice under the UCL.

63.     As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

64.     PFI Western's practices, as set forth above, have misled Plaintiff, the proposed Class, and the public in the past and will continue to mislead in the future. Consequently, PFI Western's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

65.     PFI Western's violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Class members and the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated "Regular Price[s]" and substantially discounted sale prices. These false comparisons created phantom markdowns and lead to financial damage for consumers like Plaintiff and the Class.

66.     Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief and order PFI Western to cease this unfair competition, as well as disgorgement and restitution to Plaintiff and the Class of all PFI Western's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION
### Violation of California's False Advertising Law ("FAL")
### California Business & Professions Code § 17500, *et seq.*

67.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

68.     Cal. Bus. & Prof. Code § 17500 provides:

It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any

advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…"

(Emphasis added).

69.     The "intent" required by Section17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

70.     Similarly, this section provides, "no price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price…within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement."  Cal Bus. & Prof. Code § 17501.

71.     PFI Western's routine of advertising discounted prices from false "Regular Price[s]," which were never the prevailing market prices of those products and were materially greater than the true prevailing prices, was an unfair, untrue, and misleading practice.  This deceptive marketing practice gave consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were; therefore, leading to the false impression that the products sold at PFI Western's e-commerce retail store were worth more than they actually were.

72.     PFI Western misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code alleged above.

73.     As a direct and proximate result of PFI Western's misleading and false advertisements, Plaintiff and Class members have suffered injury in fact and have lost money.  As such, Plaintiff requests that this Court order PFI Western to restore this money to Plaintiff and all Class members, and to enjoin PFI Western from continuing these unfair practices in violation of the UCL in the future.  Otherwise, Plaintiff, Class members, and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CAUSE OF ACTION
### Violation of California's Consumers Legal Remedies Act ("CLRA"),
### California Civil Code § 1750, *et seq*.

74.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

75.     This cause of action is brought pursuant to the CLRA, Cal. Civ. Code § 1750, *et seq*. Plaintiff and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code § 1761(d). PFI Western's sale of merchandise in its e-commerce retail store, PFIWestern.com, to Plaintiff and the Class were "transactions" within the meaning of Cal. Civ. Code § 1761(e).  The products purchased by Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

76.     PFI Western violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of merchandise sold in its e-commerce retail store:

      a.   Advertising goods or services with intent not to sell them as advertised; (a)(9);

      b.   Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; (a)(13).

77.     Pursuant to § 1782(a) of the CLRA, on June 24, 2019, Plaintiff's counsel notified PFI Western in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of PFI Western's intent to act.

78.     PFI Western failed to respond appropriately to Plaintiff's letter, nor did it agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as prescribed by § 1782. Therefore, Plaintiff further seeks claims for actual, punitive and statutory damages, as appropriate against PFI Western.

### VII.   PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of herself and on behalf of the other members of the

Class, requests that this Court award relief against PFI Western as follows:

    **a.**    An order certifying the class and designating Hollie Harris as the Class Representative and her counsel as Class Counsel;

    **b.**    Awarding Plaintiff and the proposed Class members actual, consequential, punitive and statutory damages, as appropriate; Awarding restitution and disgorgement of all profits and unjust enrichment that PFI Western obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

    **c.**    Awarding declaratory and injunctive relief as permitted by law or equity, including:  enjoining PFI Western from continuing the unlawful practices as set forth herein, and directing PFI Western to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

    **d.**    Order PFI Western to engage in a corrective advertising campaign;

    **e.**    Awarding attorneys' fees and costs; and

    **f.**    For such other and further relief as the Court may deem necessary or appropriate.

*///*

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims so triable.


Dated: December 31, 2019                    **CARLSON LYNCH LLP**



                                            */s/ Scott G. Braden*
                                            Scott G. Braden (CA 305051)
                                            1350 Columbia Street, Ste. 603
                                            San Diego, California 92101
                                            Telephone: (619) 762-1910
                                            Facsimile: (619) 756-6991
                                            sbraden@carlsonlynch.com

                                            *Attorneys for Plaintiff*